UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE LEIGH MIKAELIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 14-553 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Jamie Mikaelian filed this action on March 20, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 8.) On December 19, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.
## PROCEDURAL BACKGROUND

On April 12, 2007, Mikaelian filed an application for disability insurance benefits and supplemental security income benefits, alleging an onset date of December 16, 2004. Administrative Record ("AR") 26. The applications were denied initially and upon reconsideration. AR 78-81, 87-92. Mikaelian requested a hearing before an Administrative Law Judge ("ALJ"). AR 94-97. On May 7, 2009, the ALJ conducted a hearing at which Mikaelian, a medical expert, and a vocational expert testified. AR 34-73. The ALJ issued a decision denying benefits on October 15, 2009. AR 23-33. On July 27, 2010, the Appeals Council denied the request for review. AR 1-5.

On September 2, 2010, Mikaelian filed a complaint in this court. AR 729-31. On May 3, 2012, this court entered judgment reversing and remanding the matter for further proceedings. AR 733-42. The Appeals Council in turn remanded the case for further proceedings. AR 755.

On September 25, 2012, the same ALJ conducted a hearing at which Mikaelian, a medical expert, and a vocational expert testified. AR 633-685. On October 1, 2012, the ALJ issued a decision denying benefits. AR 613-27. This action followed.

# II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might

accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Mikaelian has the severe impairments of asthma and obesity.  AR 618.  She has the residual functional capacity ("RFC") to perform light work, except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; push and pull within the weight limits provided for lifting and carrying; cannot climb ladders,

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsbury*, 468 F.3d at 1114.

ropes, or scaffolds; cannot work at unprotected heights; is limited to occasional balancing; and can be exposed to cold air, heat, humidity, factory dust, gases, odors, fumes, poor ventilation or other air borne irritants no more than 10 to 15 percent of the workday.  AR 621.  Mikaelian is capable of performing past relevant work as an administrative assistant.  AR 626.

### C. Credibility

Mikaelian contends the ALJ failed to provide specific, clear and convincing reasons to reject her subjective testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Mikaelian's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms.  AR 623.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain

4

medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[2] (quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ found that Mikaelian's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC.  AR 623.  The ALJ relied on the following reasons:  (1) history of smoking; (2) routine, conservative and non-emergency treatment; (3) noncompliance with medical recommendations; (4) inconsistencies with Mikaelian's activities of daily living; (5) lack of supporting objective evidence; and (6) symptom exaggeration.  AR 621-24.

1. History of Smoking

The ALJ's reliance on Mikaelian's history of smoking is not supported by substantial evidence.  The ALJ noted that on November 24, 2009, Mikaelian admitted to her treating physician, Dr. Standiford (Professor of Internal Medicine at the University of Michigan), that she had, up to three months prior, smoked half a pack to one pack of cigarettes a day for many years.  AR 579, 622.  The ALJ therefore noted that Mikaelian had quit smoking five years after her alleged onset date, which undercut Mikaelian's claims of shortness of breath.  AR 622.

However, Dr. Standiford corrected Mikaelian's smoking history as follows:

---

[2] Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

"Mikaelian smoked approximately ½ ppd cigs for approximately 3 months in 1996 or 1997. She has not smoked since that time." AR 582.

Mikaelian's smoking history, as corrected, does not undermine Mikaelian's credibility. Dr. Standiford stated that Mikaelian was without asthma or Reactive Airways Dysfunction Syndrome (RADS) until December 16, 2004, when she was accidentally exposed to dichlorophenol 2, 4 vapor at work. AR 579. The onset date occurred well after Mikaelian's smoking.

### 2. Conservative Treatment

The ALJ discounted Mikaelian's credibility based on the routine, conservative and non-emergency treatment. AR 623. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). However, the ALJ failed to articulate what aspect of Mikaelian's treatment was routine and conservative, and did not cite evidence in the record to support his conclusion.

The record shows that Mikaelian's asthma was treated primarily with prescription medications, including steroids and codeine, and a nebulizer.[3] AR 455, 554, 579, 640, 650, 839, 846, 851. The medications yielded only some improvement. AR 216, 454, 506, 579. Mikaelian underwent a bronchoscopy in July 2005, which demonstrated only inflammation of her upper airways. AR 348, 431. Mikaelian saw different specialists, and was referred to the University of Michigan Pulmonary Department. AR 348-50, 386, 407-08. Mikaelian's doctors at the University of Michigan finally suggested that she move to a warm, dry environment. AR 50, 454. In August 2005, she moved from Michigan to the

---

[3] The Ninth Circuit has characterized "conservative treatment" as, for example, "treat[ment] with an over-the-counter pain medication." *Parra*, 481 F.3d at 751.

Palm Desert area in California, which helped but did not eradicate her cough.[4] AR 50, 464, 518-19, 579.  There is no indication that more aggressive treatment is available to treat Mikaelian's condition.  Accordingly, the ALJ's finding does not appear to be supported by substantial evidence in the record.

### 3. Noncompliance

"[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Bunnell*, 947 F.2d at 346 (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).  The ALJ found that the treatment notes described "a pattern o[f] noncompliance with medical recommendations," which decreased Mikaelian's credibility.  AR 622.  He noted that Mikaelian never followed up with the recommendation to attend speech therapy for chronic cough.  AR 334, 622.  The exhibit cited by the ALJ was dated November 14, 2005.  AR 334.  Mikaelian saw a speech and language pathologist in Michigan in December 2005.  AR 407.  She was advised to see a speech and language pathologist in California, which she did in May 2006.  AR 467-68.  The speech therapist recommended an ENT consult prior to initiating treatment.  AR 468.  The ALJ's finding, therefore, is not supported by substantial evidence.

The ALJ noted that Mikaelian did not check her blood pressure and was not always compliant with her diabetic diet.  AR 339, 622.  However, the exhibit cited by the ALJ indicates that Mikaelian checked her blood sugars fairly frequently and, more relevant here, she was compliant with her breathing medications in 2005.  AR 339.  The ALJ's reliance on noncompliance with treatment to discount Mikaelian's credibility is not supported by substantial

---

[4] In February 2006, Mikaelian told her doctor that her symptoms were not present in California.  AR 238.  In November 2009, Mikaelian's treating doctor indicated that Mikaelian's cough had improved in California, but persisted if triggered by environmental irritants.  AR 579.

evidence.

### 4. Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ noted that Mikaelian could perform household chores, run errands, shop, drive, cook, dress and bathe. AR 622, 514. He acknowledged that Mikaelian's activities of daily living were "somewhat limited by environmental restrictions." AR 622. The ALJ concluded that some of the physical, mental and social abilities required to perform such activities were the same as those necessary to obtain and maintain employment, and were inconsistent with an incapacitating or debilitating condition. AR 622.

The record indicates Mikaelian could do household chores, run errands, shop, drive, dress and bathe within certain parameters. She cannot tolerate strong odors, chemicals, smoke or cleaners. AR 514. She cannot use public transportation because of street-level emissions. She can no longer clean, do laundry, cook or walk the dog. AR 515. When the maid comes, Mikaelian goes outside or into her bedroom. AR 47. When she goes grocery shopping, she avoids the chemical aisles and soaps. AR 39. She showers with cool water and the vents open because of humidity. AR 42. At home, she keeps the air or furnace on to keep humidity out of the air. AR 47. She cannot pump her own gas due to gas fumes. AR 850.

The ALJ's finding that Mikaelian's daily activities were somewhat limited by environmental restrictions does not necessarily mean she can perform full-time work in an environment that is not entirely free of environmental irritants.[5] *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (claimant's limited activities did not constitute convincing evidence he could function regularly in work setting).

---

[5] The RFC provides that Mikaelian can be exposed to cold air, heat, humidity, factory dust, gases, odors, fumes, poor ventilation, or other air borne irritants no more than 10 to 15 percent of the workday. AR 621.

8

The ALJ's reliance on Mikaelian's activities of daily living to discount her credibility is not supported by substantial evidence.

### 5. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ found that the objective findings do not support Mikaelian's allegations of disabling impairments. AR 621. This finding is supported by substantial evidence.

The ALJ noted that the record contains numerous pulmonary function tests demonstrating normal or mild findings in 2005-2006.[6] AR 236, 277, 279, 285, 622. On the other hand, on November 24, 2009, Mikaelian had FEV1 of 1.56 liters and FVC of 1.82 liters, which is 54% and 49%.[7] AR 582. On August 2, 2012, Mikaelian was unable to complete pulmonary function studies due to strong cough during all breathing attempts. AR 843. The treating physician found her pulmonary status "very unstable." *Id.* On July 11, 2007, Dr. To, who performed a consultative internal medicine evaluation, found mild-to-moderate decreased breath sounds with mild wheezing in both lung fields. AR 520. There was evidence of rhonchi and rubs, and mild evidence of accessory muscle use. *Id.* Dr. To opined that Mikaelian should avoid working with fumes or dust particles due to her history of severe lung problems. AR 523. On November 24, 2009, Dr. Standiford, a treating physician, conducted a chest examination and

---

[6] A February 23, 2005 pulmonary function test showed mild restrictive lung disease, which could be explained by Mikaelian's morbid obesity. AR 303. A May 25, 2005 pulmonary function test was grossly within normal limits except for mildly reduced diffusion capacity. AR 331. Total lung capacity improved since the February 23, 2005 test. AR 236.

[7] The medical expert's opinion is not to the contrary. He opined that a FEV1 in excess of 2 liters would be considered non-severe. AR 640. However, the medical expert also explained that lower FEV1 values could be explained by exacerbation or poor effort. AR 655.

9

noted Mikaelian had excessive coughing during testing and was unable to perform a maximal FVC. AR 582. Dr. Standiford opined that Mikaelian had symptoms consistent with reactive airways dysfunction syndrome and should avoid all exposure to environmental irritants. AR 582, 590.

In summary, the medical expert opined that Mikaelian's symptoms are out of proportion to the objective medical evidence because even though there are exacerbations with apparent deterioration in her pulmonary function, there are also normal pulmonary function tests when there is no evidence of wheezing on examination. AR 640. Dr. Standiford also opined expressed surprise that there has not been gradual improvement in her symptoms. AR 582, 588. The ALJ's finding is therefore supported by substantial evidence.

### 6. Symptom Exaggeration

The ALJ found evidence of symptom exaggeration in the record. AR 622. The ALJ noted that the psychological consultative examiner indicated that Mikaelian "was at pains to present herself as impaired." AR 515, 622. She was reluctant to admit some simple abilities, and was somewhat dramatic in her presentation of distress. AR 515, 622. She began to sob noisily but produced no tears. AR 515, 622. Mikaelian's effort was suboptimal on parts of the mental status examination. AR 515, 622. Although the ALJ could reasonably interpret the evidence as showing some symptom exaggeration of Mikaelian's mental symptoms, the inference is questionable as to Mikaelian's physical symptoms because the physicians conducting pulmonary function tests indicated good effort. *See* AR 843.

### 7. Conclusion

When, as here, the ALJ provides specific reasons for discounting the claimant's credibility and some of those reasons are not supported by substantial evidence, the question remains is whether the ALJ's decision remains legally valid based on the ALJ's "remaining reasoning *and ultimate credibility*

*determination.*" *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (italics in original). The ALJ's finding based on lack of supporting objective evidence is valid but cannot stand alone. The finding based on symptom exaggeration is weak on this record as to Mikaelian's physical symptoms because the physicians indicated good effort on her pulmonary function tests. The court concludes that the ALJ's finding on credibility on the whole is not supported by substantial evidence.

### D. Remedy

The Ninth Circuit has articulated "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredit evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (footnote omitted). However, "the credit-as-true rule may not be dispositive of the remand question in all cases" and "envisions 'some flexibility.'" *Id.* (citation omitted). Thus, courts may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

On remand, Mikaelian's testimony should be credited to the extent that she must avoid exposure to cold air, heat, humidity, factory dust, gases, odors, fumes, poor ventilation or other air borne irritants. *See also* AR 523. This matter is remanded for vocational testimony based on this revision to the RFC at step four and, if appropriate, step five of the sequential analysis.

11

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 19, 2015

ALICIA G. ROSENBERG
United States Magistrate Judge